[No. C054983. Third Dist. Jan. 27, 2009.]

SUTTER HEALTH UNINSURED PRICING CASES.

COUNSEL

Wilcoxen, Callahan, Montgomery & Deacon, Steve Schultz; Daniel Wilcoxen; Ryan and Fong, Timothy J. Ryan; Gerald B. Glazer and Emry J. Allen for Movants and Appellants.

Jones Day, Jeffrey A. LeVee and Samantha S. Eisner for Defendant and Respondent Sutter Health.

Lieff, Cabraser, Heimann & Bernstein, Kelly M. Dermody, Daniel M. Hutchinson and Jenna M. Whitman for Defendants and Respondents Nathaniel Pollack et al.

OPINION

**MORRISON, J.**—Lawyers with an apparently weaker case attempted to intervene in an apparently stronger class action case. The trial court denied the motion to intervene and overruled objections to the proposed settlement.

In the apparently stronger case, a class of *uninsured* patients sued Sutter Health, alleging that it improperly denied them the discounts it granted insured patients. After much pretrial skirmishing and massive discovery, a

retired judge (Hon. Coleman Fannin) mediated a settlement representing nearly a complete victory for the plaintiffs, including attorney fees.

Michael Stowers had filed a separate suit, eventually purporting to represent a class of *accident* victims unfairly billed by Sutter Health. Although liability has not been determined, the record provides objectively sound reasons why Sutter Health could conclude that Stowers had a weak case, if any. Therefore, Sutter Health did not choose to negotiate any settlement with him or his purported class.

When the uninsured case was about to settle, Stowers moved to intervene, and he and three purported uninsured class members, appellants Rachel Svenson, Javier Barnhart and Joseph Eustis, objected to the proposed settlement. Although Stowers is not a class member, for convenience we refer to all appellants collectively as Stowers.

The trial court denied the motion to intervene and approved the settlement. Stowers filed a timely appeal.

The order denying intervention is appealable (*Socialist Workers etc. Committee v. Brown* (1975) 53 Cal.App.3d 879, 886, fn. 6 [125 Cal.Rptr. 915]), and challenges to the settlement are properly reviewed on appeal from the judgment incorporating the settlement (*Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 50 [75 Cal.Rptr.3d 413] (*Chavez*)).

Stowers has not been harmed by the settlement; in fact, the trial court ordered all discovery in the uninsured case to be provided to him, to help his case. It appears that the purpose of his motion to intervene and objection to the settlement may have been to cause Sutter Health to negotiate a settlement of this apparently weaker case.

We conclude the trial court properly denied the motion to intervene and properly overruled the objections to the settlement. Accordingly, we shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Stowers has failed to provide all relevant documents in the record on appeal. To the extent the record is incomplete, we construe it against him. (See *Mountain Lion Coalition v. Fish & Game Com.* (1989) 214 Cal.App.3d 1043, 1051, fn. 9 [263 Cal.Rptr. 104].)

On September 3, 2004, a class action was filed, alleging that it was unfair for a hospital system to reap the tax and other benefits due to its charitable status, while providing few charitable services, and in particular while granting discounts to insured patients but dunning uninsured and generally impoverished patients for the "sticker price" of treatment. (*Pollack v. Sutter Health* (Super. Ct. Alameda County, No. RG-04173716).) The suit sought relief under consumer protection statutes and subsidiary equitable and contractual theories. That case was coordinated with a similar suit (*Whitehead v. Sutter Health* (Super. Ct. S.F. City and County, No. CGC-04434647)), and they were jointly restyled *Sutter Health Uninsured Pricing Cases*, and transferred to Sacramento County as Judicial Council Coordinated Proceeding No. JC 4388. We call this the uninsured class case.

Stowers had filed his first complaint on October 30, 2001 (*Stowers v. Sutter Health* (Super. Ct. Sacramento County, No. 01AS06661), also referred to as *Stowers v. NCO Financial Systems, Inc.*), and it was coordinated with the uninsured class case on October 13, 2005. According to his third amended complaint, in June 1999 Stowers was hurt in a car accident, was treated at the Sutter Roseville Medical Center, and was billed $6,232. He alleged insured patients are given discounts, but uninsured patients, including accident victims, are dunned for the full "sticker price." He described a class of uninsured patients from October 30, 1997, to date "whose treatment was the result of being injured in an accident, who were charged unfair rates for such treatment." We call this the accident class case.

Substantial procedural skirmishing ensued in the uninsured class case, including complex pretrial issues, massive discovery, and Sutter Health's filing of a protective cross-complaint against class plaintiffs to collect on their unpaid bills.

On June 30, 2006, the uninsured class plaintiffs moved for preliminary settlement approval. In a declaration, their counsel outlined the extensive course of the litigation, as well as "several weeks" of mediation supervised by the Honorable Coleman Fannin, a retired judge.

The proposed settlement ends price discrimination against the uninsured. Class members would receive refunds or discounts, and those with outstanding collection judgments would be able to get them reduced. For the "class period" beginning September 3, 2000, the parties estimated the *retrospective* relief at about $276 million. Not only would Sutter Health affiliates end price discrimination *prospectively* for all uninsured patients regardless of income, it would limit its collection practices, provide free financial counseling and flexible payment terms, and expand its charitable care program. Based on a

lodestar of nearly $1.4 million, the settlement provided for attorney fees of $4 million.

On July 25, 2006, Stowers opposed the settlement, alleging the parties were secretly cutting him out of the deal, and the settlement was unfair in ways we detail later, but generally because he believed better terms were possible.

Part of Sutter Health's reply included a similar settlement agreement in a separate case styled *Tenet Healthcare Cases II*, Judicial Council Coordinated Proceeding No. 4289, which had been approved by Los Angeles Superior Court Judge Wendell Mortimer, Jr. It, too, provided that uninsured patients would not be charged more than insured patients, would receive financial counseling and flexible payment terms, and provided limits on collection efforts and retrospective relief. A third similar settlement had been preliminarily approved by San Francisco Superior Court Judge Richard Kramer, in *Catholic Healthcare West Cases*, Judicial Council Coordinated Proceeding No. 4453. On appeal reference is made to a similar settlement of a fourth case (*Franklin v. Scripps Health* (Super. Ct. San Diego County, No. IC859468)). Because that information was not before the trial court when it made its ruling, we decline to consider it on appeal. (See *Golfland Entertainment Centers, Inc. v. Superior Court* (2003) 108 Cal.App.4th 739, 751–752, fn. 7 [133 Cal.Rptr.2d 828].)

On August 3, 2006, Judge Abbott granted *preliminary* settlement approval, ruling Stowers lacked standing to object:

"Mr. Stowers is a plaintiff in a separate lawsuit coordinated with this proceeding and does not qualify as a member of the proposed settlement class in the Sutter Health Cases. The proposed class consists of uninsured individuals that received treatment at a Sutter facility after September 3, 2000. Mr. Stowers alleges he was treated before that date and proposed a class consisting of uninsured persons who received treatment after October 30, 1997.

". . . Although omission of Mr. Stowers and those similarly situated from the settlement may result in additional litigation or subsequent resolution on different terms, the proposal involves a resolution on behalf of a substantial majority of the plaintiffs, except those who may opt out of the settlement. Those opting out of the settlement could litigate their claims in the coordinated action along with Mr. Stowers."

Judge Abbott overruled the objection that the settlement did not provide fair discounts, in part because "The extent of overcharging is a fact that is in

significant dispute in this litigation. The settlement terms present a reasonable compromise based upon disputed facts." To streamline future proceedings, Judge Abbott ordered that Stowers be given all discovery, except for personal information about settling parties and "discovery to which objection was lodged and sustained by the court."

On October 26, 2006, Stowers objected to the final settlement, alleging the retrospective relief was unfairly low, amounting to an average discount of 35 percent, which in his view "is grossly unfair and should not be allowed" and the prospective relief "is even more egregious than the retrospective relief" because there was no cap on future *cost* increases. He cited a Sacramento Bee article about the case published on August 4, 2006, and argued Sutter Health was agreeing to a feeble settlement for publicity in a "clever manipulation to maintain the status quo without real relief." In the referenced article a Sutter Health representative reportedly indicated that "very little money will actually change hands. Instead, Sutter will likely write off significant sums owed by the patients."

Stowers also challenged the proposed attorney fees because they were not adequately documented.

Stowers also complained the settlement "was reached in secret negotiations between some of the parties to the coordinated actions, and to the exclusion of others" and this would cause unnecessary "piece-meal" litigation. He attached nearly 300 pages of discovery and other documents without clearly explaining their relevance.

Appellant Svenson (represented by Stowers's counsel) separately opposed the final settlement, claiming that as applied to her case it would not grant adequate relief: She had been billed $20,544.71, the bill had been reduced to $16,435.77, but according to an attached review by Peregrin Medical Review, it should have been $6,460.49. "Using the definitions in the proposed settlement agreement, Ms. Svenson would still be responsible for 65% of the $20,544.71 or $13,354.06," which was twice as large as it should be. She also challenged the adequacy of the documentation of attorney fees.

Although counsel's declaration states the Peregrin Medical Review is a "true and correct copy" of the document, there was no explanation of what Peregrin Medical Review is, and nothing to show that whoever prepared the document has any expertise in evaluating medical bills. The document does contain the following statement: "This bill has been reviewed in compliance with the Usual, Customary and Reasonable charges by postal zip codes for procedures performed semi-annual update; AMA Physicians'

Current Procedural Terminology (CPT) descriptions; Highest cost (AWP) of drugs plus a handling fee and markup."

There is nothing to show who reviewed the bill (other than the name Peregrin Medical Review) or the basis of expertise of the reviewer or the company. In short, the document had no foundation. (Cf. Evid. Code, § 720, subd. (a) [expert is someone with "special knowledge, skill, experience, training, or education" on the relevant subject].)

Appellant Eustis (represented by Stowers's counsel) objected, essentially echoing Svenson's objections. Sutter challenged his standing on the ground that he was insured and his insurer paid his bill.

We note here that appellant Barnhart objected at the hearing: His primary claim was that he had received *unnecessary treatment*, unfairly driving up his bill.

On October 26, 2006, concurrently with his objections to the settlement, Stowers moved to intervene, claiming it was unfair and an inefficient use of judicial resources to exclude his action from the settlement.

Sutter Health opposed the motion on the ground it was "a second attempt to hijack the settlement that the Settling Parties have worked so hard to reach. . . . [¶] Indeed, Stowers's Motion to Intervene is little more than a disguised motion for reconsideration of the Court's order rejecting his July 25, 2006 Opposition to Motion for Settlement Class Certification . . . . The *entire* body of the Motion to Intervene is an exact reproduction of the arguments Stowers presented in his July 25 Opposition." Sutter Health argued that Stowers was not a member of the settling class "because he was treated at a Sutter hospital well outside of the class period. Further, Sutter has no interest in settling with Stowers because his claims are extraordinarily weak, particularly in contrast to the claims of the Settling Plaintiffs."

The perceived weakness of Stowers's case stemmed from the following circumstances. We do not purport to adjudicate these facts, but based on the declarations and deposition excerpts in the record, Sutter Health could rationally accept them as true and if so viewed they would rationally support Sutter Health's lack of interest in settling with Stowers: (1) The insurer of the car that caused the accident gave Stowers two checks, one for the amount of his hospital bill and one for an additional $10,000. (2) Sutter never billed Stowers. (3) Stowers was a minor, so Sutter billed his father, but his father is not a plaintiff in Stowers's suit.

Sutter Health also opposed the motion on the grounds that Stowers had not filed a complaint in intervention, and he could not maintain two actions against Sutter Health.

Class plaintiffs separately opposed the motion to intervene, echoing Sutter's opposition and adding the claim that Stowers's motion was untimely. Separately, they filed a motion supporting the requested amount of attorney fees, showing the hours spent by various lawyers. However, *timesheets*, that is, statements of hours performed by task and by day, were not provided by most of the attorneys, only summaries of total hours spent and the hourly rate.

Sutter Health then filed a memorandum supporting approval of the final settlement, which functioned in part as a reply to Stowers's opposition. Out of 385,000 plus class members, only 12 objections were filed, and some of those were filed by people who were not class members. Only 102 members opted out of the class. The settlement was reached through arms'-length negotiations after extensive discovery by able counsel on both sides. In essence, both prospectively and retrospectively uninsured patients at all Sutter Health facilities will receive the same pricing as insured patients, with discounts averaging 35 percent, depending on the hospital involved, and the program will be monitored for three years. "Thus, for those objectors who expressed concern about whether Sutter might raise its prices in the future, the issue is not Sutter's prices but the extent of the discounts provided to the uninsured. Under the Settlement Agreement, those discounts must continue to be based on the discounts each hospital is providing to insurance companies." Further, a "prompt pay" discount of 10 percent would be available on top of the other discounts for those who pay their discounted bill within 30 days.

Stowers's opposition neglected to mention a key provision in the settlement: Sutter Health will provide *free* care to anybody "whose family income is less than 200% of the Federal Poverty Line, and substantially discounted care (Medicare reimbursement plus twenty percent) to patients whose family income is less than 400% of the Federal Poverty Line. . . . [U]ninsured patients whose family income is less than $80,000 [for a family of four] can qualify for discounts *beyond* those provided for" by the settlement. Another provision not mentioned by Stowers caps the amount an uninsured person has to pay at 30 percent of annual family income.

On December 12, 2006, Judge Abbott made his rulings.

Judge Abbott found the attorney fees were reasonable because they were "no more than 1.4 percent of the common benefit, which has an estimated value" of $276 million. "As a cross-check to test the reasonableness of this amount," Judge Abbott found that the lodestar was "reasonable and consistent with the litigation," the hourly rates were fair, and the multiplier "of 2.52 is fair and reasonable."

Judge Abbott disregarded standing and other challenges to the objectors and rejected their complaints on the merits, finding the settlement was fair. The order recites in detail the factors considered by Judge Abbott, including the "hard-fought litigation and extensive motion practice," "extensive negotiations over the course of approximately four months." Other factors relied on by Judge Abbott were "significant and extensive arm's-length negotiations between and among highly-experienced counsel for the parties, with the assistance of an experienced mediator (a former California Judge)," the "substantial relief" provided by the settlement, the avoidance of costs, delay and risks "presented by continued prosecution" of the case, and the "minimal opposition" by the class members.

Judge Abbott denied the motion to intervene for several independently sufficient reasons: (1) Stowers failed to submit a proposed complaint; (2) Stowers already had a pending complaint against Sutter Health, and he cannot maintain two complaints on the same cause of action at the same time; (3) his rights are not impaired by the settlement; (4) expanding the class to include Stowers's class would "interfere with the rights of the parties in the Sutter Pricing action to conduct their lawsuit on their own terms"; and (5) the motion was untimely because Stowers knew of the settlement in July but did not move to intervene until October.

On February 13, 2007, Stowers (and Svenson, Eustis and Barnhart) filed a timely notice of appeal.

## DISCUSSION

### I. Approval of the Settlement

Stowers contends the settlement should not have been approved for three reasons: (1) it violates state law; (2) the discount is unfair "as a matter of law," and (3) the attorney fees "were undocumented and excessive."

Before separately addressing these three discrete claims, we note that Stowers ignores the appropriate legal factors pertaining to approval of settlements and ignores the standard of review this court must apply.

■ We review an order approving a settlement as follows: "The trial court has broad discretion to determine whether the settlement is fair. [Citation.] It should consider relevant factors, such as the strength of plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the

proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement. [Citation.] The list of factors is not exhaustive and should be tailored to each case. Due regard should be given to what is otherwise a private consensual agreement between the parties. The inquiry 'must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.' " (*Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1801 [56 Cal.Rptr.2d 483].)

"Assuming the burden is on the proponents [of the settlement], a presumption of fairness exists where: (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small." (*Dunk v. Ford Motor Co., supra,* 48 Cal.App.4th at p. 1802.)

Judge Abbott explicitly considered the relevant criteria, and the record supports his conclusion that the proposed settlement was reasonable. The settlement followed extensive discovery and was entered into by experienced counsel after much pretrial skirmishing. Out of over 385,000 class members, 12 objected and 102 opted out. The settlement was crafted over many weeks under the supervision of a retired judge acting as a mediator. The settlement is a victory for plaintiffs, resulting in about $276 million in retrospective relief and an end to price discrimination against the uninsured, changes in collection practices, and charitable care at reduced rates or for free depending on a given patient's income relative to the federal poverty line, with a "catastrophic" cap by which no uninsured patient will pay more than 30 percent of annual income. Although not explicitly referenced in the order approving the settlement, Judge Abbott was presented with evidence that similar settlement terms had been reached in two similar cases.

The utter failure to address relevant factors considered by the trial court justifies the conclusion that Stowers has forfeited his challenge: "Instead of a fair and sincere effort to show that the trial court was wrong, appellant's brief is a mere challenge to respondents to prove that the court was right. . . . An appellant is not permitted to evade or shift his responsibility in this manner." (*Estate of Palmer* (1956) 145 Cal.App.2d 428, 431 [302 P.2d 629].) Further, as we explain in detail, the statement of facts is improperly skewed. (See *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].)

Now we turn to Stowers's specific claims.

## A. Violation of State Law

Effective January 1, 2007, after the settlement, a statute took effect that overlaps with some of the provisions of the settlement. Stowers claims the settlement is unlawful because it conflicts with that new law.

Putting aside the fact that this issue was not raised in the trial court (but see *Beyer v. Tahoe Sands Resort* (2005) 129 Cal.App.4th 1458, 1471 [29 Cal.Rptr.3d 561] [party cannot ordinarily change theories on appeal]), we reject Stowers's ad hominem claim that the settlement was rushed to take effect *in order to evade* the new law. The record does not support this claim.

■ We next observe, as class plaintiffs point out, that a settlement must be evaluated in light of the law applicable at the time of settlement. (*Dawson v. Pastrick* (7th Cir. 1979) 600 F.2d 70, 76 ["To allow post-approval changes or clarifications in the law to upset a settlement would be contrary to the established policy of encouraging settlements and frequently would allow a party to back out of a bargained-for position . . . ."]; *Shepherd Park Citizens v. General Cinema* (D.C.App. 1990) 584 A.2d 20, 24 ["It would be a positive disincentive to settlements if litigants knew an accord were vulnerable to ordinary changes in the law . . . ."].) Stowers assumes we have the power and duty to reexamine the settlement in light of the new law, but does not explain why this is so.

Further, Sutter Health points out that in addition to provisions of the settlement that are superior to the new law, the settlement itself provides: "Nothing in this Agreement shall require Sutter to take any action, or to refrain from taking any action, that would violate in any way the provisions of any statute, regulation or other law of any kind, including any statute, regulation or law that becomes effective after the Effective Date."

In such event, Sutter Health would seek court approval for a modification to the settlement in order to conform to the new law. Thus, if any member of the class believes Sutter Health is violating some later enacted law, she or he is free to compel compliance with this provision.

Nonetheless, we briefly address Stowers's claim, because portions of it are replicated in other parts of the briefs.

Health and Safety Code section 127405 was enacted in 2006 and slightly amended in 2007 and 2008. Subdivision (d) now provides: "A hospital shall limit expected payment for services it provides to a patient at or below 350

percent of the federal poverty level, as defined in subdivision (b) of Section 124700, eligible under its discount payment policy to the amount of payment the hospital would expect, in good faith, to receive for providing services from Medicare, Medi-Cal, Healthy Families, or another government-sponsored health program of health benefits in which the hospital participates, whichever is greater. If the hospital provides a service for which there is no established payment by Medicare or any other government-sponsored program of health benefits in which the hospital participates, the hospital shall establish an appropriate discounted payment." (Health & Saf. Code, § 127405, subd. (d).)

■ Legally, we see no reason why this statute would apply to the retrospective relief provided by the settlement. Stowers claims that because the settlement requires recalculation of past bills, that recalculation must take place in accordance with the current law. We disagree.

■ A statute is presumed not to operate retrospectively. (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1208–1209 [246 Cal.Rptr. 629, 753 P.2d 585]; *California Dept. of Corrections v. State Personnel Bd.* (2004) 121 Cal.App.4th 1601, 1616 [18 Cal.Rptr.3d 390].) The recalculation of bills pursuant to the settlement is a voluntary change in the existing contractual rights of the parties, but applying a later enacted statute to change the amount of the bills would impair contractual obligations. (See 8 Witkin, Summary of Cal. Law (10th ed. 2005) Constitutional Law, § 1278, pp. 972–973, §§ 1287–1288, pp. 982–986.) ■ We construe statutes to avoid constitutional doubt. (*Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 60 [195 P.2d 1]; *Walton v. City of Red Bluff* (1991) 2 Cal.App.4th 117, 132 [3 Cal.Rptr.2d 275].) Therefore, we do not read the statute as having a retrospective effect. Stowers does not make any reasoned claim that the statutory language supports his view. Accordingly, we see no ambiguity in the statute and deny Sutter Health's motion for judicial notice of certain legislative materials. (See *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 29–30 [34 Cal.Rptr.3d 520].)

Factually, Stowers's claim that the settlement violates the new statute rests on inaccurate or irrelevant portions of the record on appeal. Because he reiterates these "facts" at other points in his briefs, we address them in some detail here.

First, Stowers claims Sutter's "cost to charge ratio for all payers was 30%." But the cost of services was not the issue in the lawsuit, it was the disparity in billing between insured and uninsured patients. Further, the page in the record cited by Stowers in support of this claim is ambiguous, at best: It is to

the deposition of a "Jeffery W. Sprague," who was "most knowledgeable" about Sutter Health's charging and collection practices. The deposition page cited begins in the middle of a discussion about a question on a previous page which is not in the record. Here is the excerpt, which follows a discussion between counsel about "Medicare" as opposed to "overall payers":

"MR. LAMB: Well, I need to understand it, though, before we go ahead. [¶] Can you read it back? Maybe I just didn't hear it properly.

"MR. GLAZER [Counsel for Stowers]: Okay.

"(Record read by reporter.)

"MR. GLAZER: For Sutter Roseville.

"MR. LAMB: You want the overall percentage of paid versus as compared to charges? [*Sic.*]

"MR. GLAZER: Yes.

"THE WITNESS: It's in the order of, I'm going to estimate, 30 percent, but I can test that pretty quickly back at the office.

"BY MR. GLAZER: And correct me if I'm wrong, the ratio of paid to charges varies from third-party payer to third-party payer; is that not correct?

"A. Yes."

This is an almost textbook example of how *not* to present deposition testimony. The original question is not on the only page cited and the prior page is not in the appellate record. Then, the deponent gave an estimated answer and qualified it, stating he could clarify it later. Then the deponent was asked another question that simply confirmed that the original answer was variable, depending on the "third-party payer" involved.

At best for Stowers this passage shows that *at one particular Sutter Health hospital* about 30 percent of what is billed "overall," which we take to mean, insured and uninsured, is actually received. That figure is meaningless in evaluating the settlement at issue in this case.

Second, Stowers claims "Evidence was presented that under the settlement agreement, patients receiving retrospective relief would still be charged twice or more what they should have been charged; and that some prospective patients, under the agreement, would be charged more than three times

reasonable costs." In support he cites his exhibits "E" and "F" to his objections. Exhibit E refers to parts of the settlement agreement and F is described by counsel as "highlighted parts of the discovery obtained from the Jones Day Law Firm" which "for the most part pertain to disparity between the charges and costs at the Sutter facilities." Stowers did not trouble himself to tell us where this document is or what it shows. In fact exhibit F is located nearly 300 pages later in the record and consists of charts showing "Ratio of Cost To Charges Variations" for different facilities. How these charts support the proposition for which they are cited is not explained in the brief and we are not required to digest this material unaided by counsel. (See *Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 113 [113 Cal.Rptr.2d 90].) It also appears he means to rely on the Peregrin Medical Review sheet to support this claim: At best that document shows that someone thinks Sutter Health charges too much for services.

Third, Stowers combines a final "fact" with the above two purported facts: He claims that 80 percent of Sutter Health's *uninsured* patients "meet federal income standards for [Medi-Cal] and [Medicare] coverage; *i.e.*, an income equal to 350% of the federal poverty level." This is not accurate.

The record citation supplied shows that about 80 percent "of the uninsured who had received hospital services had not paid any amount on their bills." That fact does not address their *income levels*, only whether they paid their bills.

Stowers uses the above faulty or irrelevant information to derive a statistic showing that patients covered by Medicare or private insurance receive discounts of 65 to 70 percent, and from that he reasons that the settlement, which gives discounts of 25 to 45 percent, depending on the facility, is too low. His claim that insured or Medicare patients receive 65 to 70 percent discounts is not supported by his record citations, but is apparently based on the Peregrin Medical Review document we have discussed. Stowers's other figures are derived from irrelevant or inaccurate facts.

Stowers characterizes his facts and math as "essentially undisputed for purposes of this litigation," but this is not accurate: Sutter Health and class plaintiffs vigorously contest all of his numbers. Assuming that the new legislation applied to the recalculation of past bills, Stowers's citation to flawed or irrelevant evidence does not show that the settlement would result in improperly high recalculated bills, nor does it show that class members will not receive the same discounts provided to privately insured or Medicare patients.

In any event, as class plaintiffs point out, the essence of a settlement is compromise. Even if Stowers's calculations made any sense, the fact remains that the uninsured class plaintiffs could have lost the case and received nothing. Thus, the purported fact that the settlement does not provide as much relief as Stowers believes was *possible* does not mean the settlement was unreasonably low. (See, e.g., *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 250 [110 Cal.Rptr.2d 145] (*Wershba*) ["the test is not the maximum amount plaintiffs might have obtained at trial on the complaint, but rather whether the settlement is reasonable under all of the circumstances"].)

Finally, Stowers claims that the "charity" provisions of the settlement were "undocumented" and there is no way to know how many patients eligible for free care were improperly billed. That is an issue about settlement administration, which does not show that the settlement, providing for three years of monitoring, was unfair. Stowers baldly claims there was no provision for Sutter to "affirmatively locate" past patients who may have been overcharged. Not so. Over 385,000 past patients, identified through computer records, were notified by mail by a professional claims administration company, a Web site was established to provide information about the settlement in English, Spanish, Mandarin and Cantonese, and advertisements describing the settlement were placed in dozens of newspapers throughout Northern California, including in newspapers oriented to minority ethnic groups and in free newspapers, that is, those that might more readily be seen by impoverished class members.

## B. Unfair Discounts

Stowers claims that even if the new statute does not apply, the settlement overcharges the uninsured poor.

In making this claim, Stowers relies on the same flawed information as in his earlier claims. He begins with the alleged fact that Sutter Health's "cost to charge ratio is 30%." He seems to believe this means that Sutter Health should offer discounts of 70 percent, and argues that the settlement, with an average discount of 35 percent, is unfair.

We repeat: The fact that Sutter Health only collects about 30 percent of the "overall" bills it sends out at one particular hospital does not show anything about the income level of the patients billed. The settlement provides that *all* uninsured patients, regardless of income, will receive the same discount that insured patients receive. In addition, poor uninsured patients will either receive free care or further discounts.

Stowers separately claims that persons who are above the Medicare/Medi-Cal income limits are treated unfairly. He assumes this group consists of 20 percent of the class members, apparently by subtracting out the 80 percent of class members he thinks are low income. We have already explained why his reasoning about the 80 percent figure is wrong; the 20 percent figure derived from that 80 percent figure perforce is wrong.

Stowers further reasons that these 20 percent, while not entitled to charity care under the settlement, must be "far from wealthy" because "their incomes are [too] low to allow them to afford health insurance." Again, we do not know the specific incomes of these patients and we do not know why they are uninsured. Stowers cites to "Kaiser Family Foundation study (May 8, 2007)," but that study does not appear to be in the record on appeal, as he provides no record citation to it.

 We reiterate a fact wholly unaddressed by Stowers: The uninsured class case could have gone to an incredibly lengthy and expensive jury trial, *and the class could have lost the case.* Throughout his briefs Stowers assumes that establishing liability was simple. Noticeably absent from his briefs is any citation to any legal principle that clearly shows Sutter Health had a duty not to give discounts to insured patients, or, if given, a duty to give the same discounts to uninsured patients. The trial court explicitly noted that the case was hotly contested. A trial court should *not* evaluate a proposed settlement "against a hypothetical or speculative measure of what might have been achieved had plaintiffs prevailed at trial." (*Wershba, supra,* 91 Cal.App.4th at p. 246.) Stowers's failure to acknowledge the reality that the case might have been lost undermines his claim that the settlement is unfair.

### C. Undocumented and Excessive Attorney Fees

Stowers claims the settlement is unfair because the attorney fees are excessive in light of the recovery.

In particular, he faults the trial court for approving the attorney fees in the absence of "detailed time records" by all the attorneys, and asserts the settlement was driven by the desire by counsel for fees; as he puts it: "A significant segment of the settlement class was sacrificed at the alt[a]r of this settlement . . . ." Later he refers to class plaintiffs as "sacrificial lambs."

Stowers does not argue that the claimed hours did not justify the fee award, only that the lack of what he views as adequate documentation requires a remand to the trial court to conduct a hearing on the amount of fees.

In this case several law firms worked for class plaintiffs and all submitted declarations attesting to the hours worked and hourly rates of the various specific attorneys who worked on this case. Most of these declarations were summaries and, as Stowers points out, the lead firm, Lieff Cabraser Heimann & Bernstein, LLP, did not submit hourly timesheets.

Courts have held that such detail is not required. (*Wershba, supra,* 91 Cal.App.4th at pp. 254–255; *Weber v. Langholz* (1995) 39 Cal.App.4th 1578, 1587 [46 Cal.Rptr.2d 677].) We see no reason why Judge Abbott could not accept the declarations of counsel attesting to the hours worked, particularly as he was in the best position to verify those claims by reference to the various proceedings in the case.

Judge Abbott found the attorney fees were "no more than 1.4 percent of the common benefit, which has an estimated value" of $276 million. That was the estimated value of the *retrospective* relief alone. A trial court's determination of the value of a settlement for purposes of attorney fees is reviewed for an abuse of discretion. (*Chavez, supra,* 162 Cal.App.4th at p. 60.) In our view, an attorney fee of 1.4 percent of the recovery in a hotly contested class action suit such as this one is reasonable, perhaps even modest.

"As a cross-check to test the reasonableness of this amount," Judge Abbott found that the lodestar was "reasonable and consistent with the litigation," the hourly rates were fair, and the multiplier "of 2.52 is fair and reasonable." We see nothing wrong with this conclusion.

Stowers fails to show that the settlement was *not* worth $276 million. Repeatedly in his briefs Stowers cites to a passage of the Sacramento Bee article in which a representative for Sutter Health indicated little money would change hands as a result of the settlement. From this statement he reasons that the recovery was largely illusory, and thus class plaintiffs, in his view, were "sacrificed" so that their counsel could achieve exorbitant fees. The statement reported in the Sacramento Bee was not a judicial admission, and Stowers has made no coherent effort to challenge the trial court's finding that the retrospective relief was worth $276 million *to the class*, even if that did not mean Sutter Health had to write checks to all plaintiffs, but had to write their debts off of its books.

## II. Motion to Intervene

Stowers claims his motion to intervene should have been granted. We review an order denying leave to intervene under the abuse of discretion standard. (*California Assn. of Professional Scientists v. Schwarzenegger* (2006) 137 Cal.App.4th 371, 380 [40 Cal.Rptr.3d 354].)

The trial court gave a number of reasons for denying the motion to intervene. One reason was that Stowers failed to tender a complaint in intervention.

■ "An intervention . . . *is made by complaint,* setting forth the grounds upon which the intervention rests, filed by leave of the court and served upon the parties . . . ." (Code Civ. Proc., § 387, subd. (a), italics added.) Stowers failed to adhere to this procedural rule by preparing a complaint in intervention, therefore the trial court properly denied his motion. (See *Tokio Marine & Fire Ins. Corp. v. Western Pacific Roofing Corp.* (1999) 75 Cal.App.4th 110, 120 [89 Cal.Rptr.2d 1] ["fundamental prerequisite" is the filing of a complaint in intervention which is then served on parties]; *Muller v. Robinson* (1961) 193 Cal.App.2d 835, 837–838 [14 Cal.Rptr. 693] [where "appellant did not file his proposed complaint in intervention" trial court was justified in denying the motion to intervene].)

Stowers cites *Marc Bellaire, Inc. v. Fleischman* (1960) 185 Cal.App.2d 591 [8 Cal.Rptr. 650] (*Marc Bellaire*) in support of the proposition that his motion to intervene was procedurally adequate. The case does not support his proposition. In *Marc Bellaire,* the intervener filed "a pleading entitled 'Complaint in Intervention (Answer)' and a pleading entitled 'Complaint in Intervention (Cross-complaint for Wages and Penalty Wages).' " (*Id.* at p. 594.) The appellate court indicated this was irregular, but stated: "We need not be concerned with the fact that the intervener filed two pleadings, one in the nature of an answer and the other in the nature of a cross-complaint, because the relief which may be sought by an intervener is broad." (*Id.* at p. 595.) The *Marc Bellaire* court also concluded the error was not prejudicial. (*Id.* at pp. 595–596.) That court did *not* hold that a party may intervene without filing a complaint in intervention, it held that filing *two* complaints, although procedurally irregular, was not prejudicial.

Thus, in this case the trial court properly denied the motion based on Stowers's failure to comply with the Code of Civil Procedure.

Stowers's brief addresses some but not all of the other reasons given by the trial court. We need not address them, as one good reason is sufficient to sustain the order from which the appeal was taken. (*Filipino Accountants' Assn. v. State Bd. of Accountancy* (1984) 155 Cal.App.3d 1023, 1029 [204 Cal.Rptr. 913] [generally, "when an appellate court concludes that affirmance of the judgment is proper on certain grounds it will rest its decision on those grounds and not consider alternative grounds . . ."].) We see nothing extraordinary about this case that calls for us to address the alternative grounds for the trial court's decision regarding this particular defective motion to intervene.

Stowers also claims the trial court should have treated his motion as a motion to *consolidate*, citing the predecessor to California Rules of Court, rule 3.541 (formerly rule 1541). That rule addresses a coordination trial court's duties to manage the proceedings. Because the trial court did not treat the motion to intervene as a motion to consolidate, Stowers claims the trial court failed to exercise discretion, and the matter must be remanded. We disagree.

Stowers's motion to intervene is captioned "Motion to Intervene." The end of his motion reads as follows: "The proposed settlement [of the uninsured class case] arbitrarily includes some, but not all of the class members defined in the [accident class] action. Uninsured accident victims who received treatment before September 3, 2000 would be excluded. They should also be included. See California Rule of Court 1541."

The stray citation to a rule of court addressing a coordination trial court's duties to manage proceedings, buried at the end of a clearly captioned "Motion to Intervene," does not convert that motion to intervene into a motion to *consolidate*. The trial court properly treated the "Motion to Intervene" as a motion to intervene.

■ The fact Stowers's counsel mentioned the possibility of consolidation at the hearing on the objections to the settlement and motion to intervene does not change anything: Absent a stipulation to consolidate, a *noticed* and *written* motion to consolidate is required. (Cal. Rules of Court, rule 3.350 [formerly rule 367]; see 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 308, p. 402; 3 Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2007) Case Management, ¶¶ 12:355, 12:360, pp. 12(I)-62 to 12(I)-63 (rev. # 1, 2007).)

At the hearing Stowers's counsel asserted that all he wanted to do was expand the case to include the class purportedly represented by Stowers, which meant increasing the temporal period of relief from 2000 back to 1997: "Basically, what we're talking about is adding three additional years. Whether you call it an intervention, a consolidation, there's a way to do this. There's a procedural way to do this."

We agree there was a "procedural way" for counsel to seek relief: Counsel could have filed a proper motion to intervene or a proper motion to consolidate. He did neither.

Because Stowers failed to follow appropriate procedures, we need not address the other four independently sufficient reasons given by the trial court for denying his motion to intervene.

## DISPOSITION

The orders denying intervention and approving the settlement are affirmed. Appellants shall pay respondents' costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

Sims, Acting P. J., and Hull, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 10, 2009, S171800.