Filed 6/15/22  Christopher U. v. Andrew H. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER U., | D079236 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 21FDV02255E) |
| ANDREW H., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Laura Miller, Judge.  Affirmed.

Andrew H., in pro. per., for Defendant and Appellant.

No appearance by Plaintiff and Respondent.

Christopher U. filed a request for a domestic violence restraining order (DVRO) against Andrew H., pursuant to the Domestic Violence Prevention Act (DVPA) (Fam. Code,[1] § 6200 et seq.).  The trial court granted the request and ordered Andrew to pay $717 for costs and services, for vandalism to Christopher's car in connection with the request.  Andrew challenges the

---

[1]     Further statutory references are to the Family Code.

order, contending there was not sufficient evidence to support the court's order.  We are not able to fully evaluate Andrew's claims because the record is incomplete, and so we will affirm it.  We note that even were we to reach a conclusion based only on the record before us, we would nonetheless affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

Christopher filed a request for a DVRO against Andrew on May 12, 2021.  He lodged documents in connection with his request.  Neither the initial petition nor any documents lodged with the court in connection with the petition are in the record before us.[2]

At the hearing, Christopher explained the two had broken up in February, and Andrew had repeatedly emailed him and texted him from numerous fake phone numbers.  He told the court that his father's car passenger window was busted in on February 27, 2021.  Two minutes after the window was broken, Christopher received a text message from Andrew that said, "First one was just a tip of the iceberg.  Text me back now."[3]

In Andrew's submission opposing the request for DVRO, he supplied the court with a declaration and several exhibits.  Andrew claimed Christopher had constantly made false claims against him in court, dating back to a conflict in October 2019.  He explained he delivers groceries to people in Christopher's neighborhood, and he was dating someone who lives on the same street as Christopher, and those activities take him to the area where Christopher lives.  Andrew admitted he had tried to contact

---

[2]    Andrew did not request these documents be included in the clerk's transcript.

[3]    Christopher told the court he had submitted a copy of the text message to the court.

Christopher multiple times, but it was to return personal belongings to Christopher, including an expensive blood pressure machine. He denied breaking the windows of Christopher's vehicle. Andrew attached a text message dated May 20 that said it was from "Topher," using a fake number, and explaining the writer had filed a restraining order because his family was forcing him to do so. At the hearing, Andrew reiterated these explanations and told the court he was on Christopher's street the night the car windows were broken because he was delivering Instacart groceries after midnight.

In response to these claims, Christopher told the court the text messages Andrew had submitted were from a fake number Andrew used to send the messages to himself. The court could verify his claim by comparing the phone number to the numbers from which he had received texts, which he had already submitted to the court. And he argued that he had not told Andrew that his father's car windows were broken, but that was referenced immediately in the text messages, making him believe Andrew was responsible for the damage.

Christopher also told the court that there was surveillance video from the night the car windows were broken that showed Andrew driving past his residence, making a U-turn, then parking behind the neighbor's van. He said a neighbor saw Andrew hit each of his car's windows before speeding off. The neighbor was not present to testify; he was at work.

Christopher provided the court with the case number of the police report he filed in connection with the vandalism, which was attached to the petition for DVRO. He explained the police case would have information from the neighbors, pictures, and the videos that had been provided to police. And he argued Andrew was not contacting him to return the blood pressure

machine; the text messages he submitted with his petition did not indicate Andrew was concerned with Christopher's health or reference the blood pressure machine specifically.

The court told the parties it had reviewed all the paperwork they had submitted and considered the additional testimony they provided at the hearing. The court expressed concern about the stalking activities, as well as acts of breaking Christopher's car windows. It found Christopher's testimony to be credible—and specifically credible with respect to what he saw on the surveillance video. The court concluded Christopher met his burden of proof and issued a one-year restraining order, set to expire June 16, 2022, at midnight. The court also ordered Andrew to pay Christopher $717 for costs and services, for Christopher's broken windows.

Andrew timely appealed.

## DISCUSSION

The DVPA defines " 'abuse' " as intentionally or recklessly causing or attempting to cause bodily injury, sexual assault, placing a person in reasonable apprehension of imminent serious bodily injury to that person or to another, or engaging in any behavior that could be enjoined pursuant to section 6320. (§ 6203, subd. (a).) "Abuse is not limited to the actual infliction of physical injury or assault." (§ 6203, subd. (b).) Rather, it includes a broad range of harmful behaviors enumerated under section 6320, including threats, stalking, annoying phone calls, vandalism, and "disturbing the peace of the other party." (§ 6320, subd. (a).)

Andrew challenges the trial court's findings of abuse in the form of vandalism and harassment. He argues there was not sufficient evidence that he vandalized Christopher's car because, he contends, the court did not review exhibits that Christopher claimed showed Andrew breaking windows

4

or harassing Christopher. He also contends the court erred in finding that he harassed Christopher with unsolicited emails and text messages from multiple accounts or phone numbers because, he alleges, the court did not review any exhibits submitted by either party and instead considered only their testimony at the hearing.

It is a "cardinal rule of appellate review that a judgment or order of the trial court is presumed correct and prejudicial error must be affirmatively shown." (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187 (*Foust*).) To overcome this presumption, the appellant bears the burden of providing an adequate record to affirmatively demonstrate error. (*Ibid.*; *Sutter Health Uninsured Pricing Cases* (2009) 171 Cal.App.4th 495, 498 (*Sutter*) [incomplete record is construed against appellant].) If the appellant cannot show error in the record, the presumption of correctness requires us to affirm the order. (*Foust*, at p. 187.) We treat pro. per. litigants like any other party, affording them " 'the same, but no greater consideration than other litigants and attorneys.' " (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.) Whether proceeding pro. per. or represented by counsel, it is the appellant's burden to "affirmatively demonstrate prejudicial error." (*People v. Garza* (2005) 35 Cal.4th 866, 881.)

An appellant is bound by many rules of appellate procedure designed to facilitate our review of claims of reversible error. For example, "[a]ppellate briefs must provide argument and legal authority for the positions taken. 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived. [Citations.]' " (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862; see *Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384 [court disregards argument for which no authority is furnished].)

5

We review the grant or denial of a DVRO for abuse of discretion. (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 226; *Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420-421.) " 'To the extent that we are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review.' " (*In re Marriage of G.* (2017) 11 Cal.App.5th 773, 780.) This means "[w]e draw all reasonable inferences in support of the court's ruling and defer to the court's express or implied findings when supported by substantial evidence." (*J.M. & G.H.* (2014) 228 Cal.App.4th 925, 935.) If substantial evidence exists, it does not matter if we would believe other evidence, draw other reasonable inferences, or reach a different conclusion. (*In re Marriage of DeSouza* (2020) 54 Cal.App.5th 25, 33.) "All conflicts in the evidence are drawn in favor of the judgment," and "[w]hen supported by substantial evidence, we must defer to the trial court's findings," including findings regarding witness credibility. (*Nike v. Foreman* (2006) 144 Cal.App.4th 344, 364-365.) Further, "[i]n many domestic violence cases, . . . the sole evidence of abuse will be the survivor's own testimony which, standing alone, can be sufficient to establish a fact: 'The testimony of one witness, even that of a party, may constitute substantial evidence.' " (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 119 (*F.M. & M.M.*).)

We note that although Andrew makes a cogent legal argument, contending there was insufficient evidence to support the court's finding that he had vandalized Christopher's car and that he harassed Christopher, his argument is void of any reference to legal authority. For example, he lists the requirements for a finding of vandalism and maintains there was no evidence to support such an allegation, but he does not direct us to any legal citations or identify which element or elements were unsupported in the record.

6

Further, Andrew's contentions rely on his belief that the court failed to review exhibits and relied only on testimony. However, the court told the parties it had reviewed all the paperwork they submitted in addition to the information supplied at the hearing. Thus, the court did not rely solely on the testimony. Absent the paperwork that was before the court when it ruled on the DVRO, we are not able to evaluate fully Andrew's claims regarding the sufficiency of the evidence. Neither the original petition for DVRO nor the corresponding evidence is in the record before us. Because Andrew has failed to furnish an adequate record to affirmatively demonstrate error, the claim must be resolved against him. (See *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1296; *Foust, supra,* 198 Cal.App.4th at p. 187; *Sutter, supra,* 171 Cal.App.4th at p. 498.)

Even were we to consider only the testimony before the court and the evidence provided in the clerk's transcript on appeal, we would nonetheless conclude substantial evidence supports the court's factual findings here. Christopher told the court he had reviewed surveillance video and identified Andrew driving past his residence, making a U-turn, then parking behind the neighbor's van. He testified that minutes after vehicle windows were broken, he received a text message from Andrew telling him it was "the tip of the iceberg," implying Andrew was responsible for the broken automobile windows. This testimony supports the court's conclusion that Andrew vandalized the vehicle windows on the night in question.

Andrew himself corroborated some of Christopher's testimony; he admitted to being in the area around the time Christopher's car windows were broken. And Andrew admitted that he had contacted Christopher repeatedly. Though Andrew offered as a reason for the repeated contact his desire to return a blood pressure machine, his admission nonetheless

7

supports the court's implied factual finding that there was repeated and unwanted contact.  This conclusion, coupled with the court's express finding that Christopher's testimony was credible, constitutes substantial evidence. (See *F.M. & M.M.*, *supra*, 65 Cal.App.5th at p. 119 [testimony by victim alone can constitute substantial evidence].)  Thus, even though the court based its decision in part on evidence Andrew did not include in the record before us, there is substantial evidence to support its factual findings.

DISPOSITION

The order is affirmed.  Andrew is to bear his own costs on appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


O'ROURKE, J.


AARON, J.