Filed 1/23/25  Montenegro v. Bernal CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| RUTH MONTENEGRO, | B333048 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. 22LBCV00335) |
| OSCAR M. BERNAL, | |
| Defendant and Respondent. | |

APPEAL from orders of the Superior Court of Los Angeles County, Mark C. Kim, Judge.  Affirmed.

Law Office of J.B. Casas, Jr., Juventino B. Casas, Jr. and Alyssa B. Casas for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

## INTRODUCTION

Appellant Ruth Montenegro (Montenegro) claims ownership of the home where respondent Oscar M. Bernal (Oscar)[1] lives. In 2022, Oscar recorded a nine-year-old quitclaim deed which granted Montenegro's share of the property to Oscar's mother. In response, Montenegro sued, alleging the deed was a forgery and seeking to cancel it. After a one-day bench trial, the court found the deed legitimate and entered judgment in favor of Oscar. Montenegro now appeals the judgment. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

Montenegro and Oscar were romantic partners who lived together at various times beginning in 2005; they had two children, got married in 2016, and were ultimately divorced in 2022. When the parties lived together, they lived at a house in Long Beach owned by Oscar's mother, Aurelia Bernal (Aurelia). There is no dispute that, on February 26, 2013, Aurelia conveyed the property to herself and Montenegro as joint tenants. The grant deed was recorded two days later.

Aurelia died in January 2020. Montenegro filed for divorce from Oscar that same year. In May 2022, before the divorce was finalized, Oscar recorded the quitclaim deed which is the subject of this action. The quitclaim deed is dated February 26, 2013—the same date as the original conveyance to Montenegro—and it conveys sole ownership of the property back to Aurelia. It appears to be signed by Montenegro and Aurelia, though only Montenegro's signature is notarized.

---

[1]     We use first names to avoid confusion between Oscar and his mother and sister, who share the same last name. We intend no disrespect.

In July 2022, Montenegro filed a complaint in the trial court seeking to cancel the quitclaim deed and quiet her title to the property. Oscar answered, and the court held a one-day bench trial on Montenegro's claims in July 2023. The proceedings were not reported, and copies of the admitted exhibits are not included in the record, though some listed exhibits were attached to pretrial filings.[2] Three witnesses testified: Oscar, Montenegro, and Oscar's sister, Susana Bernal (Susana).

Oscar testified that the original grant deed and the subsequent quitclaim deed were executed (in sequence) on the same day, as part of a plan to keep the property out of foreclosure. Aurelia had previously filed for bankruptcy protection and her case had been dismissed in January 2013, the month before both deeds were executed, for failure to make payments. According to Oscar, the first deed was recorded to give Aurelia's creditors notice that title was now divided, and the second was executed and delivered to keep the property in Aurelia's control. Susana testified she had also been aware of this plan.

Montenegro testified that the quitclaim deed was a forgery. She maintained the property was a gift, to ensure Montenegro and her daughter (Aurelia's granddaughter) would always have a place to live.

The trial court found the quitclaim deed legitimate. The court found Montenegro not credible as a witness, based on a declaration Montenegro had filed in another proceeding which falsely stated that she and Oscar had bought the house together. The court compared the signature on the quitclaim deed with Montenegro's signature on her daughter's birth

---

[2]     The two deeds were attached to the complaint, as was the complaint verification. A letter from the California Secretary of State showing the licensing history of Notary Public Janet Kort has been appended to Montenegro's opening brief.

certificate, and determined that the two signatures were the same. Finally, the court reasoned it would make little sense for Aurelia to give Montenegro the property in preference to Oscar or Susana.

The trial court entered judgment in favor of Oscar on August 7, 2023. Montenegro timely appealed.

## **DISCUSSION**

In a quiet title action, "our standard of review turns on whether the facts were disputed. To the extent the facts were undisputed, and the trial court merely applied the undisputed facts to the law, our review is de novo. [Citations.] To the extent the facts were disputed, we review the trial court's factual findings for substantial evidence. [Citations.] And where, as here, the party asserting error on appeal had the burden of proof below, we may reverse only if the record compels a finding in that party's favor as a matter of law." (*Ridec LLC v. Hinkle* (2023) 92 Cal.App.5th 1182, 1197–1198.)

As noted above, most of the exhibits considered by the trial court are not part of the record here, and there is no reporter's transcript of the trial. As the appellant, Montenegro has the burden of providing a record that would establish her claimed error. (*Barak v. The Quisenberry Law Firm* (2006) 135 Cal.App.4th 654, 660.) Therefore, to the extent the record is incomplete, the gap is construed against Montenegro. (See *Sutter Health Uninsured Pricing Cases* (2009) 171 Cal.App.4th 495, 498.)

The sole issue here is whether the quitclaim deed was forged or not. Substantial evidence supports the trial court's determination that it was not.[3]

---

[3]     Montenegro argues the trial court applied the wrong burden of proof because the court found for Oscar by clear and convincing evidence. However, this would not establish the prejudice required for reversal. (See

4

The trial court was presented with testimony from two witnesses, Oscar and Susana, who were aware of the quitclaim deed from the date of its execution. They offered identical explanations for why the two deeds were executed. The trial court made its own comparison of Montenegro's signature on the deed with an exemplar of her signature from another document. And the trial court found Montenegro not credible because her testimony conflicted with sworn statements she submitted in other proceedings.

Montenegro does not challenge the trial court's finding about her credibility. Instead, she first argues the trial court was not permitted to authenticate her signature using only a single exemplar. However, the sole authority Montenegro cites is Article 2 of the Evidence Code, which provides that a writing may be authenticated by comparison with an exemplar. (Evid. Code, § 1417.) The statute does not require a minimum number of exemplars, and we decline to impose such a requirement in the absence of any other authority.

Montenegro also argues the trial court should have believed a portion of her testimony despite its credibility finding, citing *Hironymous v. Hiatt* (1921) 52 Cal.App. 727 (*Hiatt*), disagreed with on unrelated grounds by *Robertson v. Superior Court* (2001) 90 Cal.App.4th 1319. However, Montenegro's citation is incomplete. While *Hiatt* does observe that a trial court may only reject testimony "when legally justified after due consideration and comparison of all the evidence," the next words are "and whether such justification exists is also a matter entirely with [the trial] court." (*Hiatt, supra,* 52 Cal.App. at p. 734.) There is no reason to believe the

---

*TriCoast Builders, Inc. v. Fonnegra* (2024) 15 Cal.5th 766, 785–786.) A lower standard of proof would not result in a different finding.

trial court here failed to give due consideration to all the evidence, and we decline to reconsider its determinations.

## DISPOSITION

The judgment of the trial court is affirmed.  Respondent shall recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ZUKIN, J.

WE CONCUR:

CURREY, P. J.

COLLINS, J.

6