Filed 5/23/22  Malan v. Sunrise Prop. Investments, LLC CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| NINUS MALAN et al.,<br><br>      Cross-complainants and Respondents,<br><br>      v.<br><br>SUNRISE PROPERTY INVESTMENTS, LLC et al.,<br><br>      Cross-defendants and Appellants. | D078301<br><br><br><br>(Super. Ct. No. 37-2018-00034229-CU-BC-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Affirmed.

Law Offices of Douglas Jaffe and Douglas Jaffe for Cross-defendants and Appellants.

Noonan Lance Boyer & Banach, James R. Lance, Genevieve Marie Ruch; Fitzmaurice & Demergian, David K. Demergian; Demergian Law and David Demergian for Cross-complainants and Respondents.

This appeal arises from the trial court's order granting the renewed motion of respondents Ninus Malan and American Lending and Holdings, LLC (American Lending) to disqualify Douglas Jaffe as counsel for appellants Marvin, Matthew, and Sarah Razuki; Sunrise Property Investments, LLC; Super 5 Consulting Group, LLC; Goldn Bloom Ventures, Inc.; and Alternative Health Cooperative, Inc. (together, Appellants).[1]

This is one of several lawsuits involving former business partners Malan and Salam Razuki. In this one, Razuki sued Malan over disputes arising from a complex real estate investment partnership. Malan and several business entities, including American Lending, filed a cross-complaint against Razuki and several of his relatives and affiliated entities, including Appellants.

After Appellants appeared in this action through their attorney Jaffe, Malan and American Lending moved to disqualify Jaffe on the basis he had acquired confidential information about them when he previously represented them in other real estate litigation cases, one of which was still pending.[2] The trial court denied the motion.

About one year later, Malan renewed the disqualification motion based on recent developments in another case in which a different judge (Judge Richard Whitney) disqualified Jaffe from representing another party adverse to Malan. The renewed motion asserted the same grounds for disqualifying Jaffe, and added the additional ground that disqualification was required

---

[1]     We hereby deny Appellants' motion to declare a forfeiture of American Lending's rights for temporarily being unrepresented by counsel on appeal.

[2]     For readability, we will refer to procedural actions taken jointly by Malan and American Lending as having been taken by Malan, unless context requires otherwise for clarity.

because Jaffe would be a trial witness on the critical, disputed issue of who owned American Lending (Malan or Razuki).  The trial court granted the renewed motion and disqualified Jaffe.

Appellants raise procedural and substantive challenges on appeal. Procedurally, Appellants contend Malan failed to meet the standard for a renewed motion, and the trial court committed evidentiary errors. Appellants' challenge regarding the renewed motion standard fails because they address only one of the several new developments on which Malan based the renewed motion.  And their evidentiary challenges fail because they have not met their burden to show either error or prejudice.

Substantively, Appellants contend the trial court erred in disqualifying Jaffe because the information he acquired about Malan in his prior representations was not material to the issues in this case, as is required to warrant disqualification.  (See *Jessen v. Hartford Casualty Ins. Co.* (2003) 111 Cal.App.4th 698, 713 (*Jessen*) [cases are substantially similar, requiring attorney disqualification, when information material to the "factual and legal issues" in the prior case is also material to the "factual and legal issues" in the later case].)  But Appellants have not told us what the factual and legal issues are in this case, and, thus, have not shown the court erred in finding the information material.  And even if the trial court erred on the materiality issue, Appellants have not addressed the trial court's alternate finding that disqualification is required because Jaffe will be a trial witness on a critical issue.  This is also fatal to their challenge.

Finally, Appellants contend the trial court erred in granting the renewed motion because Malan unreasonably delayed in bringing it.  As we will explain, we find no abuse of discretion in the trial court's implied rejection of this claim.

3

Accordingly, we affirm the trial court's order disqualifying Jaffe as Appellants' counsel.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Pleadings

In their briefing, Appellants do not discuss the factual or legal issues underlying any of the claims in this case, which is necessary to support their challenge to the trial court's materiality analysis.  (See *Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 739 [" 'the appellant has the duty to fairly summarize all of the facts in the light most favorable to the judgment,' " a duty that " 'grows with the complexity of the record' "]; *Jessen*, *supra*, 111 Cal.App.4th at p. 711.)  We summarize the claims only briefly to provide context.

### 1.  The Complaint

In July 2018, Razuki (through counsel other than Jaffe) filed a complaint against Malan and several business entities.  Razuki alleged he and Malan had engaged in numerous real estate ventures since 2016.  Razuki further alleged these ventures were governed by an oral agreement under which "Razuki would provide the initial investment to purchase the property and Malan would manage the property.  After Razuki was paid back for his initial investment, Razuki would receive seventy-five percent (75%) of any profits while Malan would receive twenty-five percent (25%) of any profits."  "Over the years," Razuki and Malan acquired varying percentages of ownership interests in several of the defendant business entities, which held title to the partnership's properties.  Razuki alleged Malan unilaterally sold partnership assets without disclosing Razuki's interest in them and intentionally stole partnership assets.

4

## 2. The Cross-complaint

In September 2018, Malan and several business entities, including American Lending, filed a cross-complaint against Razuki, Appellants, and other business entities. The cross-complaint is over 70 pages long, asserts 27 causes of action against 14 cross-defendants, and attaches 16 exhibits consisting of about 270 pages.

Malan alleged he "is the majority owner of the companies sued by Razuki," and that "Razuki does not own or have any rights in any of the companies in this lawsuit." Malan further alleged he and/or American Lending held ownership interests in over 40 investment properties whose titles were held by Razuki-owned cross-defendants. Malan alleged he and Razuki agreed ownership of certain of the investment properties would be transferred to a holding company jointly owned by Malan and Razuki, but Razuki failed to transfer those properties to the holding company.

## B. Jaffe Appears on Behalf of Appellants

On February 4, 2019, Jaffe filed an answer to Malan's cross-complaint on behalf of appellants Super 5 Consulting Group, LLC; Alternative Health Cooperative, Inc.; and Goldn Bloom Ventures, Inc. On April 8, 2019, Jaffe filed an answer on behalf of Matthew, Marvin, and Sarah Razuki. (It is unclear from the record when Sunrise Property Investments, LLC filed its answer to Malan's cross-complaint.)

## C. Malan's Initial Motion to Disqualify Jaffe

### 1. Malan's Motion

On April 26, 2019, Malan moved to disqualify Jaffe as Appellants' counsel (the Initial Motion). Malan argued Jaffe was laboring under two conflicts of interest: (1) a "successive representation" conflict arising from his prior representation of Malan and American Lending in seven cases

substantially related to this case; and (2) a "concurrent representation" conflict arising from his continued representation of American Lending in one of those cases despite Malan's efforts to fire him.

Malan identified two lawsuits in which Jaffe had previously represented him individually: *Malan v. Sybrandy et al.* (*Sybrandy*) and *Malan v. J. Choo USA, Inc.* (*Choo*). Malan described these lawsuits only vaguely as "concern[ing] [his] business and real estate interests."

Malan also identified five lawsuits in which Jaffe had previously represented American Lending: *American Lending v. Gurfinkiel* (*Gurfinkiel*), *American Lending v. Upward Trend* (*Upward Trend*), *Meram v. American Lending* (*Meram*), *American Lending v. Lopez* (*Lopez*), and *American Lending v. Title365 Co.* (*Title365*). Malan did not describe the nature of these cases.

In a supporting declaration, Malan stated he is the sole member of American Lending and worked closely with Jaffe in the identified cases. Through this close working relationship, Jaffe learned "highly confidential information" about Malan and American Lending, including their attitudes and strategy toward litigation; general business practices and customs; litigation philosophy and settlement parameters; financial and legal strengths and weaknesses; and general business and real estate acquisitions and holdings.

Malan argued "Jaffe's [prior] representation of American Lending and Malan is substantially related to this lawsuit because it involves the same issues." Malan reasoned "Jaffe's representation of the Razuki family is inherently adverse to Malan" because Malan alleged his longtime business partner, Razuki, "had been involved in American Lending" and "transferred Malan's real property to Marvin, Matthew, and Sarah to hide it from creditors—including Malan." Malan maintained the "confidential

6

information received by Jaffe over the last five years, including information about [Malan's and American Lending's] real estate and business holdings, is directly relevant and material to the issues in this case." Thus, Malan concluded, "There is a very real danger that Jaffe, in an effort to defend the Razukis against Malan's claims to various real estate, will disclose Malan's confidential information about real estate holdings to the Razukis."

Regarding concurrent representation, Malan asserted that, despite his efforts to fire Jaffe as American Lending's counsel in *Title365*, Jaffe was still counsel of record for American Lending in that case.

Malan argued he did not unreasonably delay in bringing the Initial Motion because his counsel emailed Jaffe in November 2018 asking him to voluntarily withdraw from the case, and he then brought the motion within about three weeks of Jaffe filing an answer on behalf of the Razuki cross-defendants.

## 2. Appellants' Opposition

Appellants—through Jaffe—opposed the Initial Motion on several grounds.

First, Appellants argued there was "no substantial relationship between the cases where Jaffe previously represented Malan and this action." Appellants briefly described the nature of the prior cases:

- *Sybrandy* "was a case by Malan against two other real estate agents alleging interference by those real estate agents with a piece of property Malan was selling as a real estate agent."

- *Choo* "was a case by Malan arising from an expensive, and defective, pair of shoes purchased by Malan for his girlfriend." Appellants thought it "absurd" that Malan would claim "this case about a pair of shoes 'concerned his business and real estate interests.'"

7

- *Gurfinkiel* and *Upward Trend* were both filed to enable the filing of a lis pendens and asserted claims by American Lending that Gurfinkiel failed to include American Lending as an owner of properties that were to be jointly acquired.

- *Meram* was essentially an interpleader action in which funds owed to American Lending by a defaulted borrower were deposited with the superior court after the borrower's bankruptcy case was dismissed.

- *Lopez* was an unlawful detainer case in which American Lending obtained a default judgment against the tenant.

- *Title365* "is an ongoing action regarding Title 365's inaccurate abstract of title." Appellants asserted this case "would have been settled but for Title 365's hesitancy to pay when there is an ongoing dispute over the ownership of [American Lending]."

Appellants asserted these cases were not substantially related to the present case because "there was nothing in [them] that gave Jaffe confidential information directly at issue or of critical importance in this action." However, Appellants did not discuss the factual or legal issues underlying the claims in this case.

Second, Appellants argued Jaffe was not concurrently representing them adversely to American Lending because American Lending had not asserted any causes of action against them in the cross-complaint.

Third, Appellants asserted there was a "dispute over ownership of [American Lending]." Whereas Malan claimed he was the sole member of American Lending, Jaffe asserted in a declaration, "In my representation of [American Lending], Salam Razuki would direct litigation strategy, not Malan, and I would be paid by [American Lending] or personally by . . . Razuki." Appellants also asserted Malan's claim to own American Lending was "contrary to the evidence in the case of" *SH Westpoint Investments*

8

*Group, LLC and Salam Razuki v. Ninus Malan and American Lending* (*SH Investments*).

Finally, Appellants argued "Malan's motion should be denied due to his delay in bringing [it]." They asserted he "wai[t]ed five months to file his motion"; raised conflicts in several other cases in 2017 and 2018 but never moved to disqualify Jaffe; and unsuccessfully moved to disqualify Jaffe in another case.

Appellants argued that if the court granted Malan's motion, they would be prejudiced "by having to hire new counsel and bring them up to speed," and because Malan would use the disqualification order to seek to disqualify Jaffe on other pending cases involving Razuki.

### 3. Malan's Reply

In reply, Malan argued that, "[a]lthough the *facts* in this lawsuit are not exactly the same as those in earlier lawsuits," the previous and current matters nonetheless are substantially related because "Jaffe's role as the attorney for Malan and American Lending was to litigate and negotiate claims related to their business and real estate interests, including the ownership of American Lending, which are the *same claims* at issue here." (Italics added.)

Malan claimed "Jaffe [was] not telling the truth" about who owned American Lending, as evidenced by numerous communications between Malan and Jaffe about pleadings, discovery, motion practice, and settlement of American Lending cases. Malan filed a declaration attaching several examples of such documents.[3]

---

[3] Appellants objected to Malan submitting new evidence with his reply brief.

9

In response to Appellants' claim of unreasonable delay, Malan countered that he "filed this motion within *days* of Jaffe first appearing in this lawsuit by filing answers on behalf of his clients."

### 4.  Trial Court's Ruling

On August 26, 2019, following an unreported hearing, the trial court sustained Appellants' objection to Malan's reply evidence and denied the Initial Motion.  The court found Malan had "not shown Mr. Jaffe . . . breached a duty owed to a former client."

### D.  Malan's Abandoned Appeal

On September 23, 2019, Malan appealed the order denying the Initial Motion.  He abandoned the appeal about one year later, on September 9, 2020.

### E.  Renewed Motion to Disqualify Jaffe

### 1.  Malan's Motion

About two weeks after abandoning his appeal, Malan filed a renewed motion to disqualify Jaffe as Appellants' counsel (the Renewed Motion).  In addition to raising the same successive and concurrent representation conflict claims as in the Initial Motion, Malan raised an additional ground for disqualifying Jaffe:  he would be a trial witness on the "issue of American Lending's ownership."

Malan explained the ownership issue "is critical to this case in that much of the funds which Malan contributed to the ventures at issue here went through American Lending, and thus Malan's ownership of that entity is an integral part of his claims and defenses."  Malan supported his claim with a Compendium of Exhibits (Compendium) containing numerous court documents and communications Jaffe filed or prepared on American

10

Lending's behalf that identified Malan as a member of American Lending.[4] For example, Jaffe prepared a stipulated judgment in *Gurfinkiel* to be signed by Malan as the managing member of American Lending and by Razuki on behalf of the opposing party. Malan stated he would "call Jaffe to testify about the numerous pleadings he filed indicating that Malan owned the company instead" of Razuki.

Malan further argued Jaffe had already "inserted himself as a witness on this issue" in *SH Westpoint*, where he submitted a declaration stating "Razuki is the owner of [American Lending]" and would pay for and "direct litigation strategy" in cases involving the company. Malan pointed out that Razuki's own complaint in *SH Westpoint* contradicted Jaffe on this point—it alleged "Malan is the manager and a member of [American Lending]." Razuki later amended the complaint to clarify he (i.e., Razuki) "was mistaken" about that.

Malan acknowledged in the Renewed Motion that the court had previously denied the Initial Motion, but he argued "new evidence and discovery has [since] come to light warranting Jaffe's disqualification."[5] This new evidence arose in connection with another case involving Malan and Razuki: *HS Independence v. Katto, et al.*, San Diego Superior Court Case No. 37-2019-00029739-CU-OR-CTL. We will refer to this case as "*Katto*."

---

[4]     As we discuss in greater detail in Discussion part II.C.1., *post*, Malan requested that the court take judicial notice of certain exhibits in the Compendium.

[5]     Malan's notice of motion and supporting points and authorities cited Code of Civil Procedure section 1008, subdivision (b), which governs renewed motions based on "new or different facts, circumstances, or law." Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

In June 2019, a lender initiated a foreclosure proceeding against Wafa Katto and Malan concerning a rental property held in their names. Malan filed a cross-complaint against Katto alleging she had assumed control of the property and was keeping all the rent for herself. In other filings, Malan asserted Katto and the lender were acting on behalf of "Razuki, who tried to hire a hit man to murder Malan to take control of Malan's assets." Malan submitted documents showing Razuki was arrested and charged in federal court with conspiring to kidnap and kill Malan.

Katto—through her counsel, Jaffe—filed a cross-complaint against Malan alleging he acquired his interest in the subject property through a forged deed. She further alleged Malan had assumed control of the property and was keeping all the rent for himself. Katto sought an "account[ing] of Malan's assets and liabilities, bank accounts, rent accounts, and other accounts."

Malan cited several recent developments in *Katto* as justification for the Renewed Motion.

First, on February 27, 2020, the *Katto* court (Judge Whitney) granted Malan's motion to disqualify Jaffe on essentially the same grounds raised in the Initial Motion. The court found Malan met his burden to show he and Jaffe "had a substantial relationship through direct representation and involvement in litigation involving [American Lending] in various cases," as a result of which "Jaffe learned of confidential information about [Malan] and his finances, including his litigation strategy and philosophy." The court concluded that because the prior and present matters were substantially related, Jaffe's "access to confidential information . . . is *presumed* and disqualification . . . is mandatory."

12

Second, in addition to representing Katto in the *Katto* case, Jaffe also represented Razuki in connection with that case.  When Malan served a deposition subpoena on the notary who ostensibly notarized the allegedly forged deed, Jaffe—as Razuki's counsel—objected on the basis the subpoena sought Razuki's private consumer information.  Malan argued this representation was significant because Razuki had "attempted to have [the notary] change her sworn testimony supporting Malan."  Malan supported this claim with a declaration from his counsel recounting a conversation with the notary.

Third, "Jaffe had Malan personally served at his home with an amended cross-complaint in [*Katto*] . . . instead of requesting that his attorneys accept service."  Malan claimed this was significant because it showed Jaffe was acting adversely to Malan's safety concerns arising from "Razuki's conspiracy to kidnap and murder him."  Malan asserted this personal service violated a restraining order that prohibited Razuki "from taking 'any action to obtain [Malan]'s address or location.'"

Malan noted Jaffe's conduct led the *Katto* court to temporarily stay that case while Katto appealed the disqualification order.  The court found a temporary stay was appropriate because "Malan could be at risk of immediate danger . . . 'due to Salam Razuki's involvement in this case through his relationship with Mr. Jaffe and the assistance he is providing Mr. Jaffe.' "

The court also found a temporary stay was appropriate because Jaffe's representation of Katto gave her "an unfair advantage that permeates all phases of this case."

## 2.  Appellants' Opposition

Appellants opposed the Renewed Motion on several grounds.

13

First, Appellants argued Malan "fail[ed] to explain how nearly all the information presented is new or different from the prior motion for disqualification which this Court denied." Appellants maintained the developments in *Katto* "ha[ve] no impact on this motion." The restraining order allowed for "[p]eaceful written contact through a lawyer or a process server . . . for service of legal papers related to a court case"; Jaffe found Malan's address in a publicly available court filing in another case; and "nothing about [Jaffe] filing an objection to a subpoena . . . on behalf of Razuki . . . changes anything for purposes of" disqualification.

Second, Appellants reiterated there was a dispute regarding ownership of American Lending, but denied Jaffe would be a trial witness on the issue. "In the unlikely event" Jaffe's testimony was needed, Appellants said they would consent to him testifying.

Third, Appellants reiterated their claims that there were no successive or concurrent representation conflicts.

Finally, Appellants argued "Malan's motion should be denied due to his delay in bringing this renewed motion." Appellants accused Malan of "playing a game" by appealing the order denying the Initial Motion, only to abandon the appeal one year later and instead file the Renewed Motion. Appellants raised the same prejudice arguments they raised in opposition to the Initial Motion.

Appellants also raised several evidentiary issues. First, they objected to Malan's request for judicial notice of certain exhibits in the Compendium. Second, they objected to the portion of Malan's counsel's declaration describing his conversation with the notary.

Jaffe submitted a supporting declaration that broadly mirrored the arguments asserted in Appellants' opposition.

14

### 3. Malan's Reply

In reply, Malan emphasized "the new facts and circumstances upon which [the Renewed Motion] is based:  (1) that the Court in [*Katto*] disqualified Jaffe in February 2020 based on confidential information he learned about Malan as his attorney; (2) that Jaffe is actively working with . . . Razuki . . . to intimidate Malan and other witnesses; (3) that Jaffe's continued conflicting representation of [American Lending] warrants automatic disqualification[;] and (4) that Jaffe will be a witness as to the ownership of [American Lending], a critical issue" that "permeates many of the issues in this case."

Malan asserted a variety of objections to substantial portions of Jaffe's opposing declaration.[6]

### 4. Hearing

At the hearing on the Renewed Motion, Malan's counsel argued Jaffe's prior representation of Malan and American Lending was relevant both to show he acquired confidential information pertinent to this lawsuit, and on the "key issue" of "the ownership of American Lending," thus "put[ting] himself in as a witness" adverse to Malan on "one of the key issues in this case."

Jaffe countered that Malan had not met his "burden . . . to show what's new and what's different" and that "everything that they've talked about was there a year ago when [the court] denied this motion."  Jaffe acknowledged, however, that there were "arguably" two new facts before the court:  Jaffe having Malan personally served at home, which Jaffe maintained did not violate the restraining order; and Jaffe objecting on Razuki's behalf to the deposition subpoena to the notary in *Katto*.

---

6      We discuss this in greater detail in Discussion part II.C.2, *post*.

15

The court interjected regarding Jaffe's status as a possible witness, stating it has been the court's "position for a long time" that "any time when a counsel in the case is called as a witness" the court "ha[s] that counsel off the case" because "[y]ou can't put the counsel's credibility before the jury." Jaffe stated he would not be a witness, claiming, "I know that Mr. Razuki is the owner of [American Lending], and has been."

The court took the matter under submission.

### 5. Trial Court's Ruling

About two weeks after the hearing, the court issued a minute order granting the Renewed Motion.

The court took judicial notice of the Compendium, sustained Malan's objections to portions of Jaffe's declaration, and sustained Appellants' objection to portions of Malan's counsel's declaration.

The court found that, although it had previously denied the Initial Motion, "it is appropriate" to grant the Renewed Motion "at this time based upon the current evidence." The court's reasoning was twofold.

First, the court cited Jaffe's acquisition of Malan's confidential information through general entanglement in matters on behalf of Razuki:

> "The evidence supports Jaffe was privy to Malan's financial information and condition, the litigation strategy preferences and risk tolerances. Jaffe represents Salam Razuki in other litigation, and there is dispute as to the ownership of [American Lending]. [Citation.] Though Jaffe does not officially represent Razuki in this case, Jaffe currently represents him generally and in other litigation. Jaffe's clients here are so closely-related to Razuki such that they will share information about Malan and American Lending with him as well."

Second, the court found, "[a]t a minimum, Jaffe is a witness on th[e] critical issue" of who owns American Lending. The court noted Razuki had

16

taken conflicting positions on this issue in pleadings in another case, and, "[a]lthough Jaffe is not an attorney of record in that case, he submitted a declaration testifying that Razuki, and not Malan, owns American Lending."

## II.  DISCUSSION

### A.  Appellate Principles

We begin by setting forth well-settled appellate principles because Appellants fail to observe many of them.

"It is a fundamental rule of appellate review that a judgment is presumed correct and the appealing party must affirmatively show error." (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1484; see *Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 (*Jameson*).)

To overcome the presumption of correctness, "the appellant must identify each order that he asserts is erroneous, cite to the particular portion of the record wherein that ruling is contained, and identify what particular legal authorities show error with respect to each challenged order."  (*County of Orange v. Smith* (2005) 132 Cal.App.4th 1434, 1443; Cal. Rules of Court, rule 8.204(a)(1)(B) [appellant's brief must "support each point by argument"].)  "When a trial court states multiple grounds for its ruling," the appellant must address each of them "because 'one good reason is sufficient to sustain the order from which the appeal was taken.' "  (*People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1237 (*JTH Tax*).)  "One cannot simply say the [trial] court erred, and leave it up to the appellate court to figure out why."  (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368.)  "We may and do 'disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt.' "  (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.)

17

An appeal is not a second trial. We do not reweigh evidence. (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 12.) We "resolve all factual conflicts and questions of credibility" in the prevailing party's favor. (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.) And " 'we will affirm a judgment or order if it is correct on any theory of law applicable to the case.' " (*Cape Concord Homeowners Assn. v. City of Escondido* (2017) 7 Cal.App.5th 180, 193.)

## B. Malan Met the Renewed Motion Standard

Appellants contend Malan failed to meet the standard for a renewed motion. We disagree.

"A party filing a renewed application must, among other things, submit an affidavit showing what 'new or different facts, circumstances, or law are claimed' [citation] to justify the renewed application." (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 833; see § 1008, subd. (b) ["[a] party who originally made an application for an order which was refused . . . may make a subsequent application for the same order upon new or different facts, circumstances, or law"].)

Appellants contend Malan failed to meet this standard because Jaffe personally serving a pleading on Malan at his home did not violate any restraining order and, thus, did not constitute a new fact. This contention comes up short. Regardless of whether personally serving Malan at home constituted a new fact, Appellants have not met their burden to show error because Malan based the Renewed Motion on several additional new facts that Appellants have failed to address (e.g., the *Katto* court granting Malan's motion to disqualify Jaffe and staying the case temporarily, and Jaffe representing Razuki in connection with *Katto* and being a witness in this case). (See *Jameson*, *supra*, 5 Cal.5th at pp. 608-609 [trial court ruling is

18

presumed correct]; *JTH Tax, supra,* 212 Cal.App.4th at p. 1237 [" 'one good reason is sufficient to sustain the order from which the appeal was taken' "].)

## C. Evidentiary Rulings

Appellants contend the trial court erred by taking judicial notice of the Compendium and by sustaining Malan's objection to Jaffe's declaration. Appellants have not met their burden to show prejudicial error. (See *Truong v. Glasser* (2009) 181 Cal.App.4th 102, 119 [appellant must "show error affirmatively in the evidentiary rulings"]; *Linton v. DeSoto Cab Co., Inc.* (2017) 15 Cal.App.5th 1208, 1224 [appellant must "affirmatively demonstrat[e] prejudice, that is, that the [evidentiary] errors have resulted in a miscarriage of justice"].)

## 1. Request for Judicial Notice

The Compendium contained 35 exhibits consisting of various court filings and communications involving Jaffe. Malan's counsel filed a declaration authenticating the vast majority of the exhibits (exhibits 1-23 and 31-35), and Malan filed a declaration authenticating the remainder (exhibits 24-30.)[7] Malan also requested that the court take judicial notice of 20 of the same exhibits (exhibits 1-14, 22, and 31-35). In the minute order granting the Renewed Motion, the court stated it was "tak[ing] judicial notice of the Compendium."

Appellants contend the trial court erred by "improperly [taking] judicial notice of every document" in the Compendium. We need not reach the merits of this claim because, even assuming the court erred, Appellants have not shown they were prejudiced by the ruling. (See *Aquila, Inc. v. Superior Court*

---

7    Malan also authenticated exhibits 4 through 8, which his counsel also authenticated.

(2007) 148 Cal.App.4th 556, 569 [" 'improper taking of [judicial] notice is subject to harmless error analysis' "].)

Every exhibit to the Compendium was separately authenticated by Malan or his counsel in a declaration, and Appellants have not challenged the sufficiency of those declarations to authenticate the exhibits. Thus, even if the court erred in taking judicial notice of the exhibits, Appellants have not shown the exhibits were otherwise inadmissible. Therefore, Appellants have not shown they were prejudiced by the court's judicial notice ruling.

## 2. Jaffe's Declaration

Jaffe submitted a 31-paragraph declaration that tracked Appellants' arguments in opposition to the Renewed Motion. Malan asserted 31 objections to 25 of those paragraphs (paragraphs 3-14 and 19-31).[8] In its minute order, the trial court sustained Malan's "objections #1-31 to Jaffe's declaration."

Appellants raise procedural and substantive challenges to the trial court's ruling. Appellants have not established either.

Procedurally, Appellants contend the trial court "improperly excluded every paragraph of" Jaffe's declaration even though "Malan did not object to every paragraph." (Underlining omitted.) Appellants misunderstand the record. The trial court did not exclude all 31 paragraphs of Jaffe's declaration. Rather, the court sustained *31 objections* corresponding to only *25 paragraphs*. Thus, the trial court did not exclude any paragraph to which Malan had not objected.

Substantively, Appellants assert only the following general argument about the court's ruling as to 31 distinct objections:

_____

8    There were more objections than paragraphs because Malan asserted multiple, separate objections to some paragraphs.

20

"Jaffe had personal knowledge to support foundation for his statements in the declaration from his years of litigating these cases. The evidence excluded was not irrelevant as it related directly to the issues involved in the 'renewed' motion to disqualify. The evidence excluded did not contain improper hearsay, and any legal conclusions were proper as Jaffe is an attorney."

This challenge fails because a blanket assertion of error is insufficient to meet Appellants' burden on appeal. (See *Morgan v. Wet Seal, Inc.* (2012) 210 Cal.App.4th 1341, 1369 [rejecting a challenge to a "blanket ruling" on admissibility where the "appellants fail[ed] to identify any specific piece of . . . evidence that was either erroneously admitted or that caused them prejudice"]; *Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 89-90 ["If the appellant fails . . . even to identify the specific testimony that was allegedly erroneously admitted, much less craft an argument intended to show why that testimony was both objectionable and sufficiently prejudicial to warrant reversal, the challenge must fail." (Italics omitted.)].)

And, in any event, even if Appellants had met their burden to show the trial court erred by excluding portions of Jaffe's declaration, they have made no attempt whatsoever to explain how that error was prejudicial. (See *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 ["the appellant bears the duty of spelling out in his brief exactly how the error caused a miscarriage of justice"].)

## D. Disqualification Ruling

The trial court granted the Renewed Motion on two grounds: that Jaffe acquired confidential information about Malan through his prior representation of Malan and American Lending in other matters, and that

Jaffe will be "a witness on th[e] critical issue" of who owns American Lending.[9]

As to the first ground, Appellants contend the trial court erred because the confidential information Jaffe acquired about Malan was nothing more than " 'classic playbook information' and/or 'general business practices or litigation philosophy' which does not support disqualification." We are not persuaded. As we will explain, although *general* playbook information *ordinarily* does not require disqualification, it *can* if the playbook information is substantially related and material to issues in the current case. But because *Appellants have told us nothing about the issues in this case*, they have not shown that Malan's playbook information is not material.

Even if Appellants met their burden on the playbook information issue, they have not met their burden on the Jaffe-as-witness issue because *they completely failed to address it on appeal.* This is an independently dispositive basis on which to affirm. (See *JTH Tax, supra,* 212 Cal.App.4th at p. 1237 [" 'one good reason is sufficient to sustain the order from which the appeal was taken' "].)

Appellants also contend the trial court erred in granting the Renewed Motion because Malan unreasonably delayed in brining it. For reasons we will explain, Appellants have not shown the trial court abused its discretion in rejecting this claim.

---

[9]    The trial court did not address Malan's additional claim that disqualification was required because Jaffe was concurrently representing American Lending in *Title365* and adversely representing Appellants here. Because we are affirming on other grounds, we need not and do not address the concurrent representation issue. (See *Sutter Health Uninsured Pricing Cases* (2009) 171 Cal.App.4th 495, 513 [if the appellate court affirms the judgment on certain grounds, it generally need not address alternative grounds for affirmance].)

## 1. Playbook Information

### (a) Legal Principles

A trial court has the inherent authority to disqualify an attorney "upon ' "a showing that disqualification is required under professional standards governing avoidance of conflicts of interest or potential adverse use of confidential information." ' " (*Havasu Lakeshore Investments, LLC v. Fleming* (2013) 217 Cal.App.4th 770, 777; see *City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 846 (*Cobra Solutions*); *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145 (*SpeeDee*).)

As relevant here, an attorney owes a duty of confidentiality to former clients. (See *Cobra Solutions*, *supra*, 38 Cal.4th at p. 846; Bus. & Prof. Code, § 6068, subd. (e)(1).) To enforce this duty, the Rules of Professional Conduct prohibit an attorney from representing a new client adversely to a former client "in the same or a substantially related matter . . . unless the former client gives informed written consent" to the adverse representation. (Rules Prof. Conduct, rule 1.9(a);[10] see *Cobra Solutions*, at p. 846 [citing former rule 3-310].) "If there is a substantial relationship between the subject of the current representation and the subject of the former representation, the attorney's access to privileged and confidential information in the former representation is presumed and disqualification of the attorney from the current representation is mandatory in order to preserve the former client's confidences." (*Fremont Indemnity Co. v. Fremont General Corp.* (2006) 143 Cal.App.4th 50, 67 (*Fremont*); see *Cobra Solutions*, at p. 847.)

---

[10]     Further undesignated rule references are to the Rules of Professional Conduct.

"The subject of a current representation is substantially related to the subject of a prior representation . . . if the issues are sufficiently similar to support a reasonable inference that the attorney in the course of the prior representation was likely to have obtained confidential information *material* to the current representation." (*Fremont*, *supra*, 143 Cal.App.4th at p. 67, italics added.) In other words, "[t]wo matters are 'the same or substantially related' . . . . if the lawyer normally would have obtained [confidential] information in the prior representation . . . and the lawyer would be expected to use or disclose that information in the subsequent representation because it is material to the subsequent representation." (Rule 1.9, cmt. 3.) "Thus, successive representations will be 'substantially related' when the evidence before the trial court supports a rational conclusion that information *material* to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also *material* to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." (*Jessen*, *supra*, 111 Cal.App.4th at p. 713, italics added.)

This materiality requirement also applies to so-called " 'playbook' information"—that is, information about a " 'former client's settlement strategy and philosophy, or what sequence of demands or other tactics the former client uses in negotiating business deals, how the former client generally conducts its business, how the client deals with the stresses of litigation, what quirks of personality the client possesses or suffers from, or, in general, what "hot buttons" can be pushed to cause panic or confusion to the former client.' " (*Wu v. O'Gara Coach Co., LLC* (2019) 38 Cal.App.5th 1069, 1082; see *Fremont*, *supra*, 143 Cal.App.4th at p. 69; *Khani v. Ford Motor Co.* (2013) 215 Cal.App.4th 916, 921 (*Khani*).) Thus, an "attorney's

24

acquisition [of playbook information] during the first representation . . . would not of itself require disqualification *unless* it were found to be 'material'—i.e., directly in issue or of critical importance—in the second representation." (*Farris v. Fireman's Fund Ins. Co.* (2004) 119 Cal.App.4th 671, 680 (*Farris*), italics added; accord, *Fremont*, at p. 69; see *Khani*, at p. 922.)

"Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.] If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence. [Citations.] When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion. [Citation.] However, the trial court's discretion is limited by the applicable legal principles. [Citation.] Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law. [Citation.] In any event, a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion." (*SpeeDee, supra*, 20 Cal.4th at pp. 1143-1144; see *Cobra Solutions, supra*, 38 Cal.4th at p. 848.)

### (b) Analysis

Because the trial court resolved factual disputes about the nature of Jaffe's extensive entanglements with Malan, American Lending, and Razuki, we will "careful[ly] review" the trial court's ruling for an abuse of discretion. (See *SpeeDee, supra*, 20 Cal.4th at p. 1144.) Appellants have not met their burden to show the trial court abused its discretion.

To show that the trial court erred by disqualifying Jaffe based on his acquisition of Malan's playbook information in prior cases, Appellants must

show that the court erred in impliedly finding the playbook information is material to the issues in this case. (See *Jessen*, *supra*, 111 Cal.App.4th at p. 713; *Farris*, *supra*, 119 Cal.App.4th at p. 680; *Fremont*, *supra*, 143 Cal.App.4th at p. 69; *Khani*, *supra*, 215 Cal.App.4th at p. 922.) This requires a comparison of the "factual and legal issues" in the prior and current cases. (*Jessen*, at p. 713.)

Appellants have not made the required comparison. Although they *have* discussed at a general level the factual and legal issues in the prior cases in which Jaffe represented Malan and American Lending, Appellants have *not* discussed—at any level—the factual or legal issues in this case. Absent such a comparison, Appellants have not met their burden on appeal to show the trial court abused its discretion by finding Malan's playbook information is material to the issues in this case.

Moreover, our review of the record suggests the trial court could reasonably have made such a finding. All but one of the prior cases in which Jaffe represented Malan and American Lending involved real estate issues. Malan submitted evidence establishing Jaffe acquired confidential information about how Malan and American Lending acquire and hold their investments. Our review of the extensive pleadings in this case—unaided by Appellants' briefing—shows it involves a complex real estate investment partnership between Malan and Razuki. Each partner claims to own American Lending and accuses the other of misappropriating partnership properties. Specifically, Malan accuses Razuki of transferring properties to the Razuki cross-defendants—Jaffe's clients—to conceal them from Malan and other creditors. Jaffe's knowledge of confidential information about how his former clients acquire and hold real estate investments could prove useful to his current clients in a case involving alleged shell games to conceal such

26

properties. The trial court reasonably found Jaffe would be expected to use this information against Malan, thus requiring Jaffe's disqualification. (See Rule 1.9, cmt. 3 [matters are substantially related if a "lawyer would be expected to use" information acquired during one matter in the other matter]; *Cobra Solutions*, *supra*, 38 Cal.4th at p. 847 ["When a substantial relationship between the two representations is established, the attorney is automatically disqualified from representing the second client."].)

Thus, Appellants have not met their burden to show the trial court erred in disqualifying Jaffe based on his acquisition of Malan's playbook information.

## 2. Jaffe as a Witness

The trial court's second ground for granting the Renewed Motion was the court's finding that Jaffe will be "a witness on th[e] critical issue" of who owns American Lending. A trial court has the authority to disqualify an attorney on this basis. (See *Doe v. Yim* (2020) 55 Cal.App.5th 573, 582.) Despite the fact the trial court cited this ground at the motion hearing and in its minute order, Appellants inexplicably have not addressed it on appeal. Thus, for this separate reason they have not met their burden to show the trial court erred in granting the Renewed Motion. (See *JTH Tax, supra,* 212 Cal.App.4th at p. 1237.)

## 3. Unreasonable Delay

Finally, Appellants contend the trial court erred by granting the Renewed Motion because Malan unreasonably delayed in bringing it. We are not persuaded.

Although disqualification is ordinarily "automatic[ ]" when the substantial relationship test is satisfied (*Cobra Solutions*, *supra*, 38 Cal.4th at p. 847), a "narrow exception" applies when the "present client . . . offers

27

prima facie evidence of an unreasonable delay by the former client in making the motion and resulting prejudice to the current client" (*River West, Inc. v. Nickel* (1987) 188 Cal.App.3d 1297, 1309). However, " 'mere delay' in making a disqualification motion is not dispositive. The delay must be extreme in terms of time and consequence." (*Id.* at p. 1311.)

Appellants maintain Malan should have challenged the denial of the Initial Motion by writ petition instead of direct appeal, and should have "explain[ed] why he abandoned the appeal" to instead pursue the Renewed Motion.

Malan counters that he brought the Initial Motion within months of Jaffe's appearance on behalf of Appellants; timely appealed the denial of that motion; and promptly brought the Renewed Motion upon discovering new grounds, which explains why he abandoned the appeal. Malan does not address why he did not file a writ petition.

Based on Malan's chronology, it was not an abuse of discretion for the trial court to impliedly reject Appellants' claim of unreasonable delay. Malan promptly filed a direct appeal and could reasonably have concluded he would obtain speedier relief by bringing the Renewed Motion in the trial court based on new facts rather than continuing to pursue the appeal. Malan could also have reasonably concluded that pursuing writ relief would have been futile. (See *Cinel v. Christopher* (2012) 203 Cal.App.4th 759, 766, fn. 4 ["unlike appeals, which are heard as a matter of right, writ review is deemed extraordinary and is discretionary and rarely granted"].)

As further support of their delay claim, Appellants cite other cases in which Malan claimed Jaffe was representing parties adverse to him yet failed to seek disqualification. We are not persuaded. Appellants have not provided sufficient context about the claims, parties, or confidential

28

information in those cases to support a finding that Malan's failure to seek disqualification of Jaffe there should bar him from doing so here.

## III.  DISPOSITION

The order granting the Renewed Motion is affirmed.  Appellants to pay respondents' costs on appeal.


                                                        HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


DO, J.